IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

EDWARD COTTRELL,                    )
                                    )
                    Plaintiff,      )        Case No. CV02-0431-S-BLW
                                    )
vs.                                 )        **ORDER**
                                    )
MR. STEDTFELD, Medical Director )
IDOC; DR. HILL; PRISON              )
HEALTH SERVICES; and                )
GEORGE MILLER, Deputy Warden, )
IMSI,                               )
                                    )
                    Defendants.     )
_____)

Pending before the Court are the following motions: (1) Plaintiff's Motion

for Order to Show Cause regarding medical treatment (Docket No. 135); (2)

Defendants' Motion to Take Depositions of Prison Inmates (Docket No. 132); and

(3) Defendants' Motion for Hearing and Request for Scheduling Conference

(Docket No. 138, all parts therein).  Having carefully considered the record, the

Court has determined that Plaintiff's Motion for Order to Show Cause is granted in

part and denied in part.  Defendants' Motion to Take depositions of inmates is

granted, and their request for a hearing and scheduling conference are denied.

**Motion for Order to Show Cause**

Plaintiff alleges that Defendants failed to follow the Court's prior Order relating to treatment of his Hepatitis C, and his counsel filed a motion requesting that Defendants be sanctioned. The Court's previous Order was entered in May of 2004, and it informed the IDOC and PHS Defendants that "Plaintiff will immediately be referred to Dr. Ellen Hunter for evaluation and treatment of the Hepatitis infections. For the foreseeable future, Dr. Hunter will direct Plaintiff's treatment of the Hepatitis co-infection." *Order of May 24, 2004*, (Docket No. 114).

Plaintiff raised seven issues relating to the alleged failure to follow the Court's Order: (1) Defendants failed to vaccinate Plaintiff for hepatitis A prior to commencing Plaintiff's antiviral therapy; (2) Defendants failed to facilitate a follow-up appointment with Dr. Hunter every three months from the time he initially consulted with her; (3) Defendants failed to consult Dr. Hunter when Plaintiff developed neutropenia (a drop in his white blood cell count); (4) Defendants blocked Plaintiff's telephone access to Dr. Hunter; (5) Defendants failed to provide Neupogen to Plaintiff; (6) Defendants failed to provide ribavarin

**ORDER - 2**

and pain medications to Plaintiff in a timely manner; and (7) Defendants failed to administer antiviral medication on the basis of current blood tests.

After Plaintiff filed the motion, the Court requested that Dr. Scott Allen, the Rule 706 expert, review the Plaintiff's motion. Dr. Allen was asked to prepare a brief report based on the medical records and other information the parties had submitted regarding Plaintiff's hepatitis C treatment regimen. Dr. Allen's report indicates that he relied on the medical records attached to the Affidavit of Dr. Rebekah Haggard, but he was uncertain whether all relevant medical records from October 2004 to April of 2005 had been provided to him. Defendants received a copy of Dr. Allen's interim report and were given an opportunity to respond to the report. (Docket Nos. 148 and 147).

The Court has determined that Dr. Allen's report in combination with Plaintiff's affidavit, his medical records, and Dr. Rebekah Haggard's testimony provide reliable evidence under Rules of Evidence 701 and 702 of whether Defendants failed to follow the Court's Order regarding hepatitis C treatment. Therefore, the Court will order that the report be entered into evidence for the purpose of deciding this motion. The Court adopts Dr. Allen's findings relating to the hepatitis C treatment and has drawn its own legal conclusions therefrom.

**ORDER - 3**

Dr. Allen found that Defendants' failed to provide Plaintiff with follow-up visits to Dr. Hunter and made changes in his hepatitis C treatment without timely consulting Dr. Hunter.  Dr. Allen indicates that a follow-up visit with Dr. Hunter should have been scheduled immediately after Plaintiff's white blood cell count dropped.  This is apparently one of the likely hematologic side effects of antiviral therapy.  Despite the Court's Order that Dr. Hunter would direct Plaintiff's hepatitis C treatment, Defendants chose to interpret the Order in a manner that would forego the follow-up visits with the sub-specialist.  Given the history in this case, it is surprising that Defendants would risk violating the Court's specific Order relating to Plaintiff's hepatitis C treatment.

The Court's Order was designed to ensure that Defendants no longer made treatment decisions relating to Plaintiff's hepatitis C infection.  The Court issued the Order after Defendants took the position that Plaintiff's liver was compensated to the point where he was no longer a candidate for antiviral therapy.  Therefore, the Court deemed it necessary to have a sub-specialist direct Plaintiff's treatment. Dr. Haggard, while not a Defendant in this action, is the regional director for Defendant Prison Health Services.  At Dr. Haggard's deposition, she testified that she did not consult with Dr. Hunter when Plaintiff's antiviral therapy was changed due to a drop in his white blood cell count.  *Deposition Transcript of Dr. Rebekeh*

**ORDER - 4**

*Haggard* (Docket No. 147-2); *see also Affidavit of Dr. Rebekeh Haggard*, p. 6 (Docket No. 140-2) (stating that she did not need to consult with Dr. Hunter at three-month intervals).  She stated that she "was simply following the standard Peg-Intron protocol that the manufacturer puts out." *Haggard Deposition*, p. 75.

When Dr. Haggard was asked whether Dr. Hunter routinely prescribes Neupogen to help sustain the white blood cell count during antiviral therapy, Dr. Haggard answered: "I do not know what her standard treating protocol is." *Id.* She also testified that in her opinion it would not have been advantageous to begin the Neupogen medication earlier, and admitted that she did not obtain Dr. Hunter's opinion about starting Neupogen. *Id.*  Finally, Dr. Haggard testified that she had the "sole discretion" to implement Dr. Hunter's hepatitis C treatment plan for Plaintiff. *Id.* at 77.

Based on Dr. Haggard's testimony, she only consulted with Dr. Hunter after several months of antiviral therapy had passed, and at a point when she was uncertain whether the therapy should be stopped.  Defendants were ordered to use Dr. Hunter as the sub-specialist for Plaintiff's hepatitis C treatment, not Dr. Haggard.  Defendants' counsel were aware of the Order, but apparently did not check with Dr. Haggard to ensure that terms of the Order were being met.  At no point prior to Plaintiff's Motion for Order to Show Cause did Defendants seek

**ORDER - 5**

guidance from the Court as to whether Dr. Haggard's decision to act as treating physician for Plaintiff's hepatitis C was in compliance with the Court's Order.

After Plaintiff's counsel brought these issues to the Court's attention, Dr. Haggard submitted an affidavit stating that she had arranged an appointment for Plaintiff with Dr. Hunter.  Therefore, it appears that Defendants decided to follow the Court's Order, but only after their failure to do so had been demonstrated. Both the IDOC and PHS Defendants had the ability to seek direction from the Court in the event they lacked understanding about the Court's Order, but neither did so.  Accordingly, the failure falls equally upon both sets of Defendants.

Based on the foregoing, the Court will direct Plaintiff's counsel to submit affidavits in support of an attorney fees award for the fees and costs associated with filing the Order to Show Cause Motion.  The fee award will be made under the Court's inherent authority to ensure that Defendants comply with its Orders. *See* 28 U.S.C. § 1927; *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir. 1995)(a fee award under the court's inherent authority is meant to vindicate judicial authority).

Defendants are also ordered to schedule an appointment for Plaintiff with Dr. Hunter within ten (10) days of this Order's date.  Defendants shall arrange for Plaintiff's follow-up visit at the earliest possible opening on Dr. Hunter's schedule.

**ORDER - 6**

It is further ordered that the IDOC Defendants shall transport Plaintiff to the appointment with Dr. Hunter so that he arrives thirty (30) minutes prior to the scheduled appointment time.  The Court has learned from Dr. Hunter's office manager that Dr. Hunter will no longer accept inmate patients because the last time Plaintiff was transported to his appointment, he arrived over thirty minutes late. Defendants also failed to provide Plaintiff's medical records prior to the appointment pursuant to Dr. Hunter's request.   Therefore, the PHS Defendants shall provide all medical records relating to Plaintiff's hepatitis C treatment that have not been previously provided to Dr. Hunter.  The records shall be sent to her office one week prior to the scheduled appointment.  The records shall be sent to Dr. Hunter in chronological order in a folder.  A duplicate set of records shall be sent to Dr. Scott Allen.

Defendants shall file notices of compliance with this Order's provisions detailing the steps they have taken to comply with the Court's directive.  Notice is also hereby given that failure to comply with this Order shall result in a sanction against Defendants of $500.00 per day until compliance has been accomplished.

Any damage Plaintiff claims to have sustained as a result of the failure to follow the Court's Order may be presented as part of his damages claim at trial in this matter.

**ORDER - 7**

**Defendants' Motion to Take Prison Depositions**

Defendants also requested the opportunity to take depositions of inmates in IDOC facilities.  It appears that good cause exists to allow such depositions.  Accordingly, Defendants' motion is granted.

**Defendants' Motion for Scheduling Conference**

Finally, Defendants requested a modification of pre-trial deadlines and a scheduling conference.  The Court previously issued a modified Scheduling Order and a new trial date in this case.  (Docket No. 149)  Accordingly, Defendants' request for a scheduling conference to establish new pre-trial deadlines is denied.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Order to Show Cause regarding medical treatment (Docket No. 135) is GRANTED as set forth above.  Plaintiff's counsel shall submit affidavits in support of an attorney fees and costs award within thirty (30) days of this Order's date.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Take Depositions of Prison Inmates (Docket No. 132) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion for Scheduling Conference (Docket No. 138, all parts therein) is DENIED.

ORDER - 8

DATED:  **July 7, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court

**ORDER - 9**